**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Kamal Ali and Israa Hassan

   v.                                    Civil No. 15-cv-201-AJ
                                        Opinion No. 2016 DNH 098
United States of America, et al.

## O R D E R

Under the Immigration and Nationality Act (INA), alien spouses of American citizens may gain lawful permanent resident status.  8 U.S.C. § 1151(b)(2)(A)(i).  To obtain this status, however, the citizen spouse must first file an I-130 petition on behalf of the alien spouse to the United States Citizenship and Immigration Services (USCIS).  8 U.S.C. § 1154(a)(1)(A)(ii).

Kamal Ali, a Sudanese citizen, and Israa Hassan, an American citizen, married in 2003.  Soon after, Hassan filed an I-130 visa petition on behalf of her new husband.  The USCIS denied Hassan's petition, and the decision was later upheld by the Board of Immigration Appeals (BIA).

Ali and Hassan now challenge the government's decision to deny Hassan's petition.  The parties have submitted cross motions for summary judgment.  For the reasons set forth below, the plaintiffs' motion for summary judgment is denied, and the defendants' motion for summary judgment is granted.

## **Background**[1]

In 1988, Ali was admitted into the United States on a
student visa to attend Long Island University in Brooklyn, New
York.  AR 187, 234, 237.  Ali, though, never attended Long
Island University.  AR 208.  Instead, by 1989, he was living in
Boston, Massachusetts.  AR 1148.  That year, Ali attended the
wedding of Thelma Lewis (a coworker at the time) and met
Thelma's daughter – Priscilla Lewis.  AR 1148, 1176.  Ali and
Lewis married in 1993.  AR 90.

Four years later, Lewis, as an American citizen, filed an
I-130 petition on behalf of Ali.  AR 238-40, 837.  Ali
concurrently filed an I-485 application to become a permanent
resident.  AR 628-31, 837.  Lewis's I-130 petition alleged that
she and Ali lived together in Manchester, New Hampshire.  AR
238.  Based on the I-130 petition, Lewis and Ali were scheduled
to be interviewed in January 1998 by the U.S. Immigration and
Naturalization Service (INS)[2].  AR 219.  Before the scheduled
interview took place, however, Ali wrote to officials that he
and Lewis "had . . . separated for personal reason[s]."  Id.

---

[1] The background section is drawn from the Administrative Record
(AR).

[2] In 2003, the USCIS assumed responsibility for the immigration
service functions of the federal government.  The Homeland
Security Act of 2002 dismantled INS and separated the agency
into three components within the Department of Homeland Security
(DHS).  USCIS, Our History, https://www.uscis.gov/history-and-
genealogy/our-history (last updated Feb. 11, 2016).

Ali requested that the interview be rescheduled so that he and Lewis could "talk . . . about [their] marriage."  Id.

The interview was rescheduled for March 1998, but Lewis and Ali failed to appear.  AR 828.  The couple later alleged that they could not make it to the interview because Lewis's mother was ill.  AR 841.  The interview was rescheduled for May 1998, but the couple's attorney requested the interview be rescheduled "at a later date" due to "a scheduling conflict."  AR 832.  The couple did appear to the third rescheduled interview in June 1998, yet the interview was cancelled because Lewis failed to bring identification.[3]  AR 827.

Based on the foregoing, an INS investigation began concerning possible marriage fraud between Ali and Lewis.  AR. 206.  The investigation made several findings.  First, the investigation confirmed that Ali never attended Long Island University pursuant to his student visa.  AR 208.  Second, a records check from the Massachusetts welfare department reported that Lewis had received welfare checks at a single Boston address since 1985, yet records revealed that Ali had lived at multiple other addresses in Massachusetts and New Hampshire since 1993.  AR 207, 210, 212, 215.  Moreover, no record uncovered during the investigation linked Lewis to any address

---

[3] In prior notices, INS indicated that Lewis needed to bring valid photo identification to the interview.  AR 219, 829.

in New Hampshire.  AR 212-18.  Third, a criminal record check indicated that Lewis had been arrested seven times, yet all changes were ultimately dismissed.  AR 214.

In September 1999, INS agents visited Lewis at her Boston residence; the same address as indicated by the Massachusetts welfare department.  AR 212-13.  During the interview with INS agents, Lewis alleged that Ali offered her $1000 to marry her "for the purpose of obtaining a green card through marriage." AR 213.  Lewis additionally claimed that she and Ali had separated in 1998, but Ali asked her to lie and tell immigration officers that they were still married and living together.  Id. After the interview, Lewis withdrew her I-130 petition.  AR 213, 619-21.

Ali and Lewis divorced in 2002.  AR 92.  A year later, Ali married Israa Hassan, and the two had a child in 2004.  AR 91, 118.  In 2006, Hassan became a naturalized American citizen.[4]  AR 81.  Hassan soon after filed an I-130 petition on behalf of Ali. AR 81-96.  As a result of the petition, Ali and Hassan were interviewed by a USCIS officer in January 2008.  AR 282.

Eight months after the interview, the USCIS sent Hassan a notice of its intent to deny her I-130 petition.  AR 281-83. The notice first quotes Section 204(c) of the INA, codified as 8 U.S.C § 1154(c), which states that

---

[4] Like Ali, Hassan was born in Sudan.  AR 81.

> no [I-130] petition shall be approved if . . . the
> alien has previously been accorded, or has sought to
> be accorded, an immediate relative or preference
> status as the spouse of a citizen of the United States
> or the spouse of an alien lawfully admitted for
> permanent residence, by reason of a marriage
> determined by the Attorney General to have been
> entered into for the purpose of evading the
> immigration laws . . . .

AR 281.  The notice concluded that the USCIS intended to deny

Hassan's I-130 petition because "[t]here is no evidence in the

record of proceeding which supports the claim that the

[previous] marriage of Mr. Ali and Ms. Lewis was bona fide in

nature."  AR 283.  The notice provided Hassan eighteen days to

respond.  Id.

In response to the USCIS's notice, Ali and Hassan submitted

multiple documents, including affidavits by Ali and Lewis.  AR

1175-79.  Ali's affidavit alleged that Ali and Lewis met in

1989, married in 1993, and afterward lived with Lewis's mother

in Massachusetts.  AR 1176.  The affidavit claimed that, by

1997, Ali and Lewis's marriage became strained due to financial

problems.  Id.  Ali claimed that he moved to New Hampshire for

work, and Lewis stayed behind to continue living with her

mother.  AR 1176.  Ali's affidavit stated that Lewis moved to

New Hampshire with him by the end of 1997, however, the two

separated by November 1998, and Lewis moved back to

Massachusetts with her mother.  AR 1177.  The affidavit

concluded that it was "completely untrue" that Ali offered Lewis

money for marriage.  Id.

Lewis's affidavit made similar assertions.  AR 1179.  The affidavit claimed that "Ali never offered [Lewis] any money to marry him" and "[i]t was not a fraudulent marriage."  Id.  The affidavit additionally contended that Lewis "remember[ed] telling someone from I.N.S. that [the two] were having marriage problems at the time, but [she] never told anyone that [Ali] offered [her] money for a green card."  Id.

In addition to the affidavits by Ali and Lewis, Ali and Hassan presented the following: affidavits by Lewis's mother, Lewis's step-father, and Ali's cousin contending that Ali's previous marriage to Lewis was legitimate, joint tax returns by Ali and Lewis from 1993 to 1998, a 1997 amended lease noting that both Ali and Lewis were lessees of a Manchester, New Hampshire apartment, and a 1998 utility bill for the same Manchester apartment addressed to both Ali and Lewis.  AR 1180-95; 1197; 1208-10.

In November 2008, the USCIS formally denied Hassan's I-130 petition.  AR 275-79.  The USCIS found "clear and convincing evidence" that Ali "had a previous involvement in a fraudulent marriage that was entered into in order to circumvent the immigration laws of the United States."  AR 276.  The decision noted that Lewis's most recent affidavit contradicted "her previous oral and written testimonies," and although Ali and

6

Hassan provided documents "with [Lewis's] name on them" for an
apartment "in Manchester, New Hampshire . . . at the interview
on January 22, 2008, [Ali] stated that [Lewis] did not live in
New Hampshire, but stayed in Massachusetts."  AR 275.  The
decision also noted that the date Lewis's mother claimed that
Lewis had moved to New Hampshire with Ali, Lewis was still
"receiving welfare checks, food stamps, and cash subsidies,
through the State of Massachusetts."  Id.  And, "[a]s of
September 1999, she was still receiving Medicare from the State
of Massachusetts."  Id.

    The USCIS's decision further noted that "[a]fter multiple
attempts by [INS] to conduct an interview with" Ali and Lewis in
1997, the pair finally appeared for an interview in June 1998,
but the interview was not conducted because Lewis did not have
photo identification.  AR 276.  The decision additionally
recounted that, during an interview with INS in 1999, Lewis
claimed that "Ali had allegedly offered her a sum of $1000 to
marry him to he can get a green card" and the two were not
living together at the time of the June 1998 interview with INS.
Id. (quotation marks omitted).

    Based on these facts, the USCIS determined that there was
"no evidence present in the record . . . that the marriage
between [Ali and Lewis] was bona fide in nature."  AR 278.
Consequently, because the USCIS found that Ali previously

7

entered in a fraudulent marriage with Lewis to circumvent United States immigration law, it concluded that Hassan's current petition on behalf of Ali must be denied.  Id.

Ali and Hassan appealed the USCIS's decision to the BIA. AR 1122-30.  In its opinion, the BIA "agree[d] that the record contains substantial and probative evidence of prior marriage fraud and supports a finding that the [Ali's] prior marriage was entered into for the purpose of evading the immigration laws." AR 969.  The BIA noted that Lewis's 2008 affidavit conflicted with her 1999 reported statement that Ali offered her $1000 "to marry him so that he could obtain his green card."  Id. Nevertheless, the BIA was "not persuaded by the subsequent evidence submitted regarding the validity of the marriage between [Ali] and [Lewis]."  Id.  As such, the BIA concluded that Section 204(c) of the INA barred Hassan's I-130 petition on Ali's behalf.  Id.  This suit followed.  Doc. no. 1.

## Legal Standard

Generally, summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  However, "[t]his rubric has a special twist in the administrative law context."  Associated Fisheries of Maine, Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997).  Under the

Administrative Procedure Act (APA), a reviewing court may set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.  "In making this determination, an agency's factual findings are entitled to deference regardless of which party has moved for summary judgment.  Thus, the usual rules that describe how the court must construe the summary judgment record do not apply."  Sig Sauer, Inc. v. Jones, 133 F. Supp. 3d 364, 369 (D.N.H. 2015).

"Review under the arbitrary and capricious standard is narrow and this [c]ourt may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions."  River St. Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009).  "Consequently, judicial review of agency decisions is highly deferential.  If the agency's decision is supported by any rational view of the record, a reviewing court must uphold it."  Atieh v. Riordan, 797 F.3d 135, 138 (1st Cir. 2015) (quotation marks and citations omitted).

## Discussion

### I.   Applicable Law

"Under the [INA], an alien may achieve lawful permanent resident status if he qualifies as an 'immediate relative' of a U.S. citizen."  Atieh v. Riordan, 797 F.3d 135, 138 (1st Cir.

2015) (citing 8 U.S.C. § 1151(b)(2)(A)(i)).  Spouses of U.S. citizens are considered "immediate relatives" under the statute. 8 U.S.C. § 1151(b)(2)(A)(i).

Before an alien spouse may gain lawful permanent resident status, a citizen spouse must first file an I-130 petition.  § 1154(a)(1)(A)(ii).  However, if a USCIS district director determines "either that the alien entered into a marriage 'for the purpose of evading the immigration laws' or that the alien 'attempted or conspired' to do so, the alien will be rendered ineligible for lawful permanent resident status."  Atieh 797 F.3d at 138 (quoting § 1154(c)); see also Matter of Tawfik, 20 I. & N. Dec. 166, 168 (BIA 1990).  This determination "also applies to any prior marriage found to have been entered into for the purpose of evading immigration laws . . . ."  Alabed v. Crawford, No. 1:13-CV-2006-SKO, 2015 WL 1889289, at *8 (E.D. Cal. Apr. 24, 2015) (emphasis added).

At this stage "[i]t is the [g]overnment's burden of establishing substantial and probative evidence that the prior marriage was a sham."  Id. (citing Matter of Kahy, 19 I. & N. Dec. 803, 806 (B.I.A. 1988)); see also 8 C.F.R. § 204.2. "Substantial evidence 'is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 66 (1st

Cir. 2010) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)).

If the government meets this burden, it must issue a Notice of Intent to Deny (NOID) to the petitioner and afford the petitioner "an opportunity to rebut the information and present information . . . before the decision is rendered" by the government.  8 C.F.R. §§ 103.2(b)(8)(iv), (b)(16)(i).  At this point, "the burden shifts to the petitioner to rebut [the] USCIS's finding of fraud and establish that a prior marriage was not 'entered into for the purpose of evading immigration laws.'" Zemeka v. Holder, 989 F. Supp. 2d 122, 130 (D.D.C. 2013) (quoting Kahy, 19 I. & N. Dec. at 805).

If, after receipt of the petitioner's response to the NOID, the USCIS district director determines that the citizen spouse's I-130 should not be approved, the citizen spouse may appeal the director's decision to the BIA.  8 C.F.R. §§ 204.2(a)(1)(ii), 1204.1.  If the BIA's decision is unfavorable, the petitioner may file suit in district court.  5 U.S.C. § 701 et seq.

On review by the district court, "[a]n agency's finding regarding the bona fides of a marriage is normally regarded as a finding of fact . . . [and] such a finding is reviewed under the substantial evidence standard."  Atieh, 797 F.3d at 138.  Under the substantial evidence standard, the court "cannot contravene the agency's factfinding unless a reasonable adjudicator would

be compelled to reach a contrary conclusion." Akwasi Agyei v.
Holder, 729 F.3d 6, 13 (1st Cir. 2013).  "Within this rubric, a
credibility determination is a finding of fact; and [the court]
will uphold such a finding so long as the agency 'articulate[s]
specific and cogent reasons' to support its view." Atieh, 797
F.3d at 138 (quoting Ahmed v. Holder, 765 F.3d 96, 101 (1st Cir.
2014)).  Where, as here, the BIA's decision adopts and affirms
the USCIS's denial of the petition but also elaborates on some
of the bases of the USCIS's decision, the court reviews both
decisions.  See Akwasi Agyei, 729 F.3d at 13; Zemeka, 989 F.
Supp. 2d at 128.

## II.  **Analysis**

The plaintiffs' motion for summary judgment presents three
general arguments: (1) the defendants' failure to hold an
evidentiary hearing and allow the plaintiffs to confront Lewis
and the agents who interviewed her in 1999 violated the
plaintiffs' due process rights; (2) the defendants applied the
incorrect legal standard in determining that Ali previously
entered into a marriage with Lewis for the purpose of evading
immigration laws; and (3) even under the deferential standard of
review, the record does not support a finding of prior marriage
fraud.  The court will address each argument in turn.

### A.   Due Process

The Fifth Amendment provides that "[n]o person shall be . .

. deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  As such, "no process is due if one is not deprived of 'life, liberty, or property.'"  Kerry v. Din, 135 S. Ct. 2128, 2132 (plurality opinion).

The plaintiffs argue that the defendants violated their due process rights by failing "to hold an evidentiary hearing and provide [Ali] with the opportunity to confront [Lewis] . . . as well as the . . . agents who elicited" the 1999 statement from Lewis that her marriage to Ali was a sham.  Doc. no. 15-1 at 12. In support, the plaintiffs rely heavily on the Ninth Circuit's decision in Ching v. Mayorkas, 725 F.3d 1149 (9th Cir. 2013).

In response, the defendants contend that the plaintiffs' "faith in Ching is misplaced" and instead argue that the Supreme Court's opinion in Din, 135 S. Ct. 2128, limits the plaintiffs' due process claims.  Doc. no. 19 at 20-21.  Alternatively, the defendants allege that "even assuming that some constitutional . . . safeguards were implicated by the actions of the USCIS and BIA," the plaintiffs were nonetheless "provided with a fundamentally fair opportunity to rebut the derogatory information" presented by the government.  Id. at 22.

The defendants believe Din supports that the plaintiffs do not have a liberty interest in this matter, and any explanation for the government's decision to deny Hassan's petition was more than what due process required.  In Din, Fauzia Din petitioned

13

to have her husband, Kanishka Berashk, classified as her immediate relative.  Din, 135 S. Ct. at 2132.  At the time of the petition, Berashk was living in Afghanistan.  Id. at 2139 (Kennedy, J., concurring in judgment).  The petition was eventually granted, and Berashk subsequently filed a visa application and was interviewed by consular officials in Islamabad, Pakistan.  Id. at 2132.  After the interview, "[a] consular official informed Berashk that he was inadmissible under [8 U.S.C.] § 1182(a)(3)(B) but provided no further explanation."  Id.[5]

In a plurality opinion, Justice Scalia, joined by Chief Justice Roberts and Justice Thomas, found that "Din was not deprived of 'life, liberty, or property' when the Government denied [Berashk's] admission to the United States," and, therefore, "there is no process due to her under the Constitution."  Id. at 2138.  Justice Kennedy, joined by Justice Alito, concurred with the plurality "that the case must be vacated and remanded[,]" but explained that "rather than deciding, as the plurality does, whether Din has a protected liberty interest, . . . [and] even assuming she does, the notice

---

[5] "§ 1182(a)(3)(B), covers '[t]errorist activities.'  In addition to the violent and destructive acts the term immediately brings to mind, the INA defines 'terrorist activity' to include providing material support to a terrorist organization and serving as a terrorist organization's representative.  § 1182(a)(3)(B)(i), (iii)-(vi)."  Id.

she received regarding her husband's visa denial satisfied due process." Id. at 2139.

The plaintiffs claim in their objection to the defendants' motion for summary judgment that Din "is inapposite because it arose from different facts" and, in any event, "the plurality decision . . . leaves the Ninth Circuit's decision in Ching, as it relates to [Hassan's] liberty interest in her marriage to [Ali], undisturbed." Doc. no. 23 at 4. The court agrees with the plaintiffs that Din "did not produce a majority position on the question whether a citizen has a constitutionally protected . . . liberty interest in residing in the United States with his or her non-citizen spouse." Struniak v. Lynch, No. 1:15-CV-1447, 2016 WL 393953, at *15 (E.D. Va. Jan. 29, 2016). Nevertheless, even assuming that the plaintiffs have a constitutionally protected liberty interest in this matter, due process did not require an evidentiary hearing and an opportunity for the plaintiffs to cross-examine Lewis and the immigration agents who interviewed her in 1999.

"Due process is flexible and calls for such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 930 (1997) (brackets omitted) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). To determine what process is due, courts generally balance three factors:

> First, the private interest that will be affected by
> the official action; second, the risk of an erroneous
> deprivation of such interest through the procedures
> used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would
> entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

As to the first factor, the plaintiffs quote Ching to

contend that "[t]he right to live with and not be separated from

one's immediate family is a right that ranks high among the

interests of the individual and that cannot be taken away

without procedural due process."  725 F.3d at 1157 (quotation

marks omitted); doc. no. 15-1 at 14.  Contrary to the

plaintiff's claims, however, the first Mathews factor does not

favor additional process in this case.  In Ching, the plaintiff-

appellant faced "imminent removal" from the U.S.  Id. at 1157

(quotation marks omitted).  From this fact, the circuit court

found that separating Ching from her family could not occur

without procedural due process.  Id.  Here, although Ali's

temporary protected status has been withdrawn, the plaintiffs

make no allegation that Ali is currently in removal proceedings

or that Ali expects to be immediately separated from his family.

AR 955-56.  Therefore, the first factor does not benefit the

plaintiffs' due process claims.  See Alabed, 2015 WL 1889289, at

*18 ("To find that even the potential of being placed in removal

16

proceedings creates an imminent risk of separation would expand
the first element of Matthews [sic] too far.").

For the second factor, the plaintiffs again cite Ching and
allege that the USCIS's due process "shortcomings . . . are
clear."  Doc. no. 15-1 at 17.  The plaintiffs warn that, under
the USCIS's current procedural scheme,

> USCIS may allege that an alien beneficiary previously
> participated in a marriage fraud conspiracy based on a
> mere summary of what a disgruntled ex-spouse said at
> the time of their separation, withhold those
> statements from the beneficiary and their current U.S.
> citizen spouse over the course of the adjudication,
> and then decide the marriage fraud issue based solely
> on written submissions prepared without the benefit of
> context or clarification.

Doc. no. 15-1 at 17.

Based on the plaintiff's reliance of Ching, a short
background is necessary.  As sufficiently summarized in Alabed,

> In Ching, a U.S. Citizen, Elden Fong ("Fong"),
> submitted an I-130 visa petition for an immediate
> relative on behalf of his spouse, a Chinese native
> legally residing in the United States, Teresita Ching
> ("Ching").  When Ching entered the United States, she
> began dating and ultimately married, Fong. Fong
> submitted an I-130 visa petition on behalf of Ching,
> but Ching later informed USCIS she no longer wished
> the petition to be considered because Ching planned to
> divorce Fong.  Ching and Fong divorced in December
> 2007, and Ching remarried Brooke Joseph ("Joseph") who
> then submitted an I-130 visa petition on Ching's
> behalf.
>
> The USCIS denied Joseph's I-130 petition because at an
> interview of Fong conducted by USCIS, Fong confessed
> and provided a sworn statement that he and Ching had
> never consummated their marriage, never lived
> together, and that Fong was offered and paid cash in

return for marrying Ching.  Ching and Joseph responded
to Fong's statement by submitting a detailed
declaration from Ching describing in excruciating
detail her intimate relationship with Fong.  The USCIS
subsequently denied Joseph's I-130 petition on grounds
that Ching's first marriage was not entered into in
good faith.  Although USCIS had reviewed Ching's
declaration, it was determined to be self-serving.
Ching and Joseph challenged USCIS' denial in federal
district court asserting they had been denied their
right to due process because they were not given an
opportunity to cross-examine Fong.

2015 WL 1889289, at *16 (quotations marks and citations

omitted).  With this backdrop, the Ninth Circuit found that the

second Mathews factor "strongly favor[ed]" Ching because the BIA

concluded that Ching's first marriage was fraudulent based only

on Fong's sworn statement against "substantial evidence [by

Ching] that the first marriage was bona fide."  725 F.3d at

1158.

     The facts in this case are distinguishable from the facts

relied on by the Ninth Circuit in Ching.  Unlike Ching, the

USCIS and BIA relied on multiple pieces of evidence to conclude

that Ali's marriage to Lewis was fraudulent.  As discussed

above, the USCIS's decision found that although the plaintiffs

in 2008 submitted documents "with [Lewis's] name on them" to

show that Ali and Lewis previously lived together in Manchester,

New Hampshire and Lewis contradicted her earlier claim that her

marriage to Ali was a sham, Ali nevertheless admitted to

immigration officials the same year "that [Lewis] did not live

in New Hampshire, but stayed in Massachusetts."  AR 275.

The decision also found that the date Lewis's mother claimed that Lewis had moved to New Hampshire with Ali, Lewis was still "receiving welfare checks, food stamps, and cash subsidies, through the State of Massachusetts[,]" and, "[a]s of September 1999, she was still receiving Medicare from the State of Massachusetts."  Id.  The BIA's decision affirmed the USCIS's decision for the same reasons.  AR 969.

Compared to Ching, the evidence considered by the USCIS in this case was significantly greater, "and thus the risk of an erroneous determination is much less than that in Ching." Alabed, 2015 WL 1889289, at *19.  Furthermore, because the USCIS and BIA considered Lewis's contradicting 1999 and 2008 statements in denying Hassan's petition, the plaintiffs have failed to demonstrate how the cross-examination of Lewis – or the cross-examination of immigration agents about an interview conducted seventeen years ago – would likely result in a different outcome.

On a final note for this factor, the plaintiffs contend that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."  Doc. no. 15-1 at 15 (quoting Goldberg v. Kelly, 397 U.S. 254, 269 (1970)).  Yet, even Ching, relied on heavily by the plaintiffs, concedes that

19

"[b]ecause of its inherent differences from the judicial process, administrative proceedings in particular must be carefully assessed to determine what process is due given the specific circumstances involved.  And we must do so on a case by case basis."  Ching, 725 F.3d at 1157.  Therefore, based on the record in this case, the second Mathews factor weighs against the need for an evidentiary hearing.

Turning to the final Mathews factor, the plaintiffs contend that the "fiscal and administrative burdens" on the government to conduct an evidentiary hearing do not outweigh the "[p]laintiffs' protected interests."  Doc. no. 15-1 at 20-21. For this factor, Mathews instructs that "[a]t some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost."  424 U.S. at 348.

Facially, there does not appear to be a significant burden on the USCIS to conduct an evidentiary hearing.  Aliens in removal proceedings, for example, already have the ability to present evidence on their own behalf and cross-examine witnesses in a hearing.  See 8 U.S.C. § 1229a(b)(4)(B).  Further, the defendants point to no governmental interest or administrative hurdle in providing an evidentiary hearing under the specific facts of this case.  As such, the third Mathews factor weighs

toward the plaintiffs.  Compare Ching, 725 F.3d 1159
(determining that "because the process sought by Plaintiffs is
guaranteed to aliens in removal proceedings, there are no
practical problems with such a requirement" for I-130 petitions)
with Penobscot Air Servs., Ltd. v. F.A.A., 164 F.3d 713, 724
(1st Cir. 1999) (finding that the third Mathews factor weighed
against plaintiffs when an agency "would be required to conduct
trial-type hearings in connection with nearly every complaint
filed with it.").

Still, in consideration of all three Mathews factors, due
process does not support an evidentiary hearing in this matter.
Importantly, the facts in Ching are distinguishable from this
case.  The plaintiffs do not contend that Ali faces imminent
removal from the U.S., and, compared to Ching, the USCIS and BIA
considered significantly more evidence to support their decision
to deny Hassan's I-130 petition.  Further, the plaintiffs have
not shown how a cross-examination of Lewis – or of immigration
agents concerning a seventeen-year-old interview with Lewis –
would potentially change the government's credibility
determinations or ultimate decision.  Thus, although the third
factor weighs for the plaintiffs, the other factors – primarily
the second factor – outweigh the need for an evidentiary
hearing.

B.    Application of Section 204(c) of the INA

Section 204(c) of the INA states that

no [I-130] petition shall be approved if . . . the
alien has previously been accorded, or has sought to
be accorded, an immediate relative or preference
status as the spouse of a citizen of the United States
or the spouse of an alien lawfully admitted for
permanent residence, by reason of a marriage
determined by the Attorney General to have been
entered into for the purpose of evading the
immigration laws . . . .

8 U.S.C § 1154(c) (emphasis added).

In determining whether a marriage was entered into to
circumvent U.S. immigration law, "[t]he substantive question is
whether, at the time of the marriage, there was an intent to
establish a life together." Rodriguez v. I.N.S., 204 F.3d 25,
27 (1st Cir. 2000) (brackets and quotations marks omitted); see
also Matter of Laureano, 19 I. & N. Dec. 1, 1 (BIA 1983). "To
the extent that evidence of post-marriage conduct bears on this
issue, it is relevant." Rodriguez, 204 F.3d at 27.

The plaintiffs argue that the USCIS and BIA incorrectly
applied Section 204(c) when they failed to consider evidence
from when Ali and Lewis "entered into" their marriage (1993-97)
and instead improperly "limited its fact-finding to the period
from 1997 to 1998 . . . ." Doc. no. 15-1 at 22. Consequently,
the plaintiffs contend that the USCIS and BIA's decisions "were
based purely on evidence of [Ali and Lewis's] separation" and
not "the time period that was most probative as to whether [Ali

22

and Lewis] intended to 'establish a life together' . . . ."   <u>Id.</u>

Ali and Lewis married in 1993.  AR 90.  Twice, though, the USCIS incorrectly states in its decisions that Ali and Lewis married in 1997.  AR 278, 282.  The plaintiffs interpret the USCIS's error to mean that it ignored any evidence of Ali and Lewis's marriage prior to 1997 and limited its analysis to the time Lewis filed her I-130 petition in 1997.  The record does not support this inference.

A fair reading of the record shows that the USCIS was well aware that Ali and Lewis were married in 1993.  In fact, in its decision to deny Hassan's petition, the USCIS made a point to acknowledge the plaintiff's correction to the record "that the actual date of marriage was August 21, 1993, not August 17, 1993."  AR 275.  On the very next page, the USCIS's decision again states that Ali married Lewis on August 21, 1993.  AR 276.  The first page of the USCIS's NOID also states that Ali married Lewis in 1993.  AR 281.

Moreover, the record supports that the USCIS and BIA considered all relevant evidence from before and after Ali's marriage to Lewis in 1993.  The USCIS's decision details that it reviewed evidence submitted by the plaintiffs they claim supports that Ali and Lewis married with the intention to establish a life together, including affidavits by Ali, Lewis, and Lewis's mother.  AR 275.  These affidavits detail Ali and

Lewis's marriage prior to 1997.  AR 1176-81.

In addition to Lewis's 2008 affidavit, the USCIS's decision also discussed Lewis's 1999 interview with immigration agents in which she alleged that Ali "offered her a sum of '$1000 to marry him so he can get a green card.'"  AR 276.  If true, Ali's offer logically occurred before their 1993 wedding.  Thus, based on the foregoing, the record shows that the USCIS and BIA's decisions properly applied Section 204(c) in considering evidence before and after Ali and Lewis's marriage.

C.   Whether the Record Supports the USCIS and
     BIA's Findings

The plaintiffs lastly argue that, even under this court's deferential standard, the record does not support a finding of marriage fraud.  The plaintiffs primarily allege that the "USCIS and BIA's reliance, and implied finding of credibility, upon [Lewis's] 1999 statement" to immigration officials that her marriage to Ali was a sham "was not supported by specific and cogent reasoning."  Doc. no. 15-1 at 24.  The court disagrees.

In reaching a decision, an administrative agency need only "fairly consider[] the points raised by the complainant and articulate[] its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion."  Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007).  The USCIS and BIA

did so in this case.

The USCIS's decision to deny Hassan's I-130 petition adequately discussed the plaintiffs' presented evidence and sufficiently explained why it believed the evidence was unpersuasive.  Foremost, the USCIS's decision noted that Lewis's 2008 affidavit claiming she married Ali "out of love" contradicted her 1999 statement to immigration officials that Ali paid her to get married.  AR 275, 1179.  The plaintiffs maintain that the USCIS and BIA unfairly accepted Lewis's 1999 statement over her 2008 affidavit.  The USCIS's decision, however, articulates that it did not heavily weigh the plaintiffs' submitted evidence (including Lewis's 2008 affidavit) because it largely conflicted with the record and other sworn testimony.  For example, the decision notes that the plaintiffs submitted a cable bill and a lease for a Manchester, New Hampshire apartment with both Ali and Lewis's names, but Ali admitted during an interview with immigration officials that "Lewis primarily lived in Massachusetts and [he] primarily lived in New Hampshire during the duration of their marriage."  AR 278.  In addition, the decision also discusses that at the time Lewis's mother claims Lewis moved to New Hampshire with Ali, Lewis was still receiving Massachusetts state benefits at a Boston address.  AR 275.

"Weighing the evidence is, within wide limits, the exclusive province of the agency." Atieh, 797 F.3d at 140. Based on the facts detailed above, the court may not disturb the USCIS's decision to weigh Lewis's 1999 statement alleging marriage fraud over her 2008 recantation because the evidence reasonably supports the USCIS's conclusion. See id.

Yet, this court would be remiss if it did not note that the record also shows conflicting evidence whether Ali and Lewis ever lived together as a married couple. In a 2009 affidavit submitted in support of the plaintiff's appeal to the BIA, Ali claims that he lived with Lewis at 32 Creston Street in Boston from 1993-95. AR 1136. Ali alleges that "[t]he entire household" moved 434 Washington Street in 1995, and, soon after to 12 Lorenzo Street where they lived until 1997. Id. However, in Ali's 1997 lease for a Manchester, New Hampshire apartment, Ali claims that his last address was 804 Center Street in the Jamaica Plains neighborhood of Boston. AR 1150. Moreover, a social security number search conducted by immigration officials in 1999 revealed multiple other addresses linked to Ali – none of which matched the addresses listed in his 2009 affidavit. AR 210.

In conclusion, the court "cannot contravene the agency's factfinding unless a reasonable adjudicator would be compelled to reach a contrary conclusion." Akwasi Agyei, 729 F.3d at 13.

Here, the USCIS – and BIA in adopting the USCIS's findings –
sufficiently explained its findings and rationale for denying
Hassan's I-130 petition.  In conjunction, because the USCIS's
"decision is supported by [a] rational view of the record," the
"court must uphold it."  Atieh, 797 F.3d at 138.

### Conclusion

Based on the foregoing, the USCIS and BIA's decisions were
supported by a rational view of the record and must be upheld.
Atieh, 797 F.3d at 138.  In addition, the plaintiffs have not
shown that they were deprived of due process.  Therefore, the
plaintiffs' motion for summary judgment (doc. no. 15) is denied
and the defendants' motion for summary judgment (doc. no. 18) is
granted.  The clerk of the court shall enter judgment in
accordance with this order and close the case.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

June 7, 2016

cc:  Nathan P. Warecki, Esq.
     Terry L. Ollila, Esq.